# DEAN, & OTHERS,

*againſt*

# JOHN ANGUS.

---

*JUDGEMENT ON A PLEA TO THE JURIS-
DICTION OF THE ADMIRALTY.*

IN a former ſuit in this court, Silas
Talbot libelled and recovered againſt
Dean, Purviance and Harbeſon, as own-
ers of the brigantine Hibernia, and alſo
againſt certain other perſons, reſpondents
in that cauſe, for a wrongful capture on
the high ſeas.  From the decree in that
cauſe, an appeal was entered, and the
cauſe removed to the High Court of Er-
rors and Appeals for the commonwealth;
where a judgment was finally obtained
againſt the ſaid reſpondents to a confi-
derable

derable amount. And now, Dean, Purviance and Harbefon libel againft John Angus, their captain, for fatisfaction of the damages they have fuftained, in confequence of the wrongful capture he had made. To this libel, Angus hath filed for anfwer, a denial of the wrong done, and a plea to the jurifdiction of this court in the prefent caufe—" For this, viz. that " the contract between the faid libellants " and him, the faid Angus, and alfo the " damage alledged to be fuftained by " the faid libellants, if any there be, arofe " upon the land, to wit, in Philadelphia, " in the county of Philadelphia."

THREE acknowledged principles of law naturally prefent themfelves, for the folution of the prefent queftion, viz.

1ft. WHERE the original caufe of action is *exclufively* of admiralty or *exclufively* of common law jurifdiction, all incidental matters, and all matters neceffarily flowing from, or dependent upon, that firft caufe of action, fhall follow the original jurifdiction, whatever the complexion

( 77 )

plexion of thofe matters feparately con-
fidered may be.

2dly. WHERE the original caufe of
action is partly of common law and part-
ly of admiralty jurifdiction, the common
law fhall be preferred.

3dly. WHERE the jurifdictions are
concurrent, the fuit may be determined
in either.

To one or other of thefe principles
muft the prefent cafe apply, to afcertain
the jurifdiction by which it is to be tri-
ed; and the propriety of the application
depends upon this fole queftion, What
is the original caufe of action in this fuit?

It is alledged in fupport of the plea,
that this is a *new* action between the own-
ers of a veffel and their captains, and
hath no neceffary connection with the
fuit brought by Silas Talbot—That it is
enough if the refpondents fhew that the
decree paffed againft the libellants, not
as principals in the wrongful capture,
but folely on account of the maritime
law, which makes owners anfwerable for
the mifconduct of the captains they em-

L                              ploy;

ploy ; and, therefore, their connection with Angus, as captain of the brig Hibernia, muft be confidered as the true caufe of the damages they fay they have fuffered, and the fource from which the prefent fuit originates—And fo infer, that as this connection is grounded on a contract exprefs or implied, made upon the land, the original caufe of action muft, from its nature and locality, be exclufively of common law jurifdiction.

THE two criterions of exclufive jurifdiction are, the *fubject matter* and the *locality* of the tranfaction.

IT is not doubted but that the queftion of *prize or no prize,* when it is the foundation of a fuit, is *exclufively* of admiralty cognizance, from the *fubject matter*. The authorities to this point are too numerous and conclufive to admit of contradiction. But thefe authorities go farther, and fay, that the mere taking *as prize,* and all matters dependent thereupon, are alfo peculiarly of admiralty jurifdiction. Lord chief juftice *Lee's* opinion, in the cafe of Rous *v.* Haffard,

Haffard, as cited by lord *Mansfield,* and again cited by juftice *Willes,* in the cafe of Le Caux *v.* Eden, *Douglafs,* 581, is full to this purpofe. " The great queftion " was, Whether an action of trefpafs " would lie for taking a fhip *as prize ?* " Lord chief juftice *Lee,* having called " in two civilians to his affiftance, deli- " vered the opinion of the court, That " though, for taking a fhip on the feas, " trefpafs would lie at common law, " yet, when it was taken *as prize,* though " taken wrongfully, though it were ac- " quitted, and though *there were no colour* " *for the taking,* the judge of the admi- " ralty was judge of the damages and " cofts, as well as of the principal mat- " ter; and he laid it down as law, that " if fuch an action was brought in Eng- " land, and the defendant pleaded, not " guilty, the plaintiff could not recover."

By this quotation, it is clear, that, in order to fix the admiralty jurifdiction, it is not neceffary that the queftion be- fore the court fhould precifely be, Is this property lawful prize to the captor,

or

or is it not ? but a fuit for cofts and damages may be had in the admiralty for a taking *as prize,* though wrongfully done, and even without any colour for fuch taking; and, as it fhould feem from the cafe, even though the property, fo taken, fhould not be in the poffeffion of the court.

So, alfo, in the cafe of Lindo *v.* Rodney and Vaughan, *Douglafs,* 592, lord *Mansfield,* in giving the opinion of the court, fays—" A thing being done upon " the high feas, does not exclude the ju-" rifdiction of the common law. For " feizing, ftopping or taking a fhip upon " the high feas *not as prize,* an action will " lie ; but for taking *as prize,* no action " will lie, The nature of the queftion " excludes, not the locality." And a little farther on—" The end of a prize " court is to fufpend the property till " condemnation, *and to punifh every fort* " *of mifbehaviour in the captors.*"

How it came to pafs, that the cafe of *Silas Talbot* was, by the Court of Errors and Appeals, and ftill is, by conceffion of

of counfel in the prefent caufe, confider-
ed to be *not* of admiralty jurifdiction, on
account of the *fubject matter*, I am at a
lofs to conceive; efpecially when I look
at the two only points of defence taken
in that caufe, viz. 1ft. That from the
papers found on board the captured
veffel, and from other concomitant cir-
cumftances, there was a reafonable co-
lour for *taking as original prize;* and,
2dly. That if the veffel captured was in-
deed prize to Silas Talbot, the three brigs
were in fight at the time of the capture,
and, by the maritime law, acquired
thereby an intereft in the property—I
fay, thefe pleas, together with the cur-
rent of the teftimony then exhibited, and
the time of the tranfaction, being time of
war, all united in fixing that caufe with-
in the admiralty jurifdiction, from the
fubject matter and nature of the cafe.

IT is in obedience to ftrong conviction,
that I thus venture to differ in opinion
from the judgment of the honorable
Court of Errors and Appeals—a judg-
ment which, I am inclined to believe,
would

would not have taken place, but from the peculiar fituation of Talbot's caufe. The Court of Appeals for the United States, in prize caufes, had rejected the appeal, becaufe the queftion was not ftrictly *prize or no prize*, but an action for damages between citizen and citizen. That court, as I have underftood, looked at that caufe in no other point of view, and therefore refufed to take cognizance of it, and foon after adjourned.—The appeal was then carried to the High Court of Errors and Appeals for this commonwealth. The proctors had previoufly agreed not to conteft the point of jurifdiction, and fo the caufe came before the judges on the merits only ; and the court proceeded to fentence, without fufpecting their jurifdiction.— After fentence, however, fome of the judges began to entertain fcruples refpecting the jurifdiction of the court, and, upon enquiry, found that the jurifdiction had only been fubmitted to by confent. The court well knew, that confent could not give jurifdiction, and therefore retracted

or

or fufpended the fentence, until an argument fhould be held on that point—and the queftion of the jurifdiction was again agitated. In the mean time, that is, between the rejection of the caufe by the Court of Appeals for the United States, and it's introduction into the Court for the commonwealth, the cafe of *Le Caux* v. *Eden,* as reported by *Dou-glafs*, with lord Mansfield's differtation on admiralty jurifdiction fubjoined, made their firft appearance amongft us, and furnifhed new ideas refpecting the court of admiralty. Then, for the firft time, did the diftinction occur, between the *prize* court and the *inftance* court of admiralty. Poffeffed of this idea, the judges of appeal for the ftate looked at the proceedings which the court of admiralty had adopted in the cafe before them, and found they had been *in perfonam,* by attachment, to anfwer for damages arifing from a tort committed at fea. This, it was obferved, was never the practice in the *prize* court, which always proceeded *in rem,* by proclamation and
monition,

( 84 )

monition, whether the property be, in fact, in the poffeffion of the court or not. —And fo it was in the cafe of the King *v.* Broom, *Carth.* 398, by proclamation at the Royal Exchange, although the prize taken had been previoufly fold at Barbadoes.   And, for this error of form in the admiralty, *Talbot's* cafe was confidered as belonging to the *inftance* court. The judges of appeal confidered themfelves as an *inftance* court of appeals, and fo proceeded to the definitive decree.

HAD the court of admiralty, when Talbot's caufe firft made its appearance there, been poffeffed of the light which hath been fince thrown upon this fubject, it is more than probable that the procefs would have been conducted otherwife than it was.   It fhould be obferved, however, that an *exclufive* jurifdiction cannot be fubverted by an erroneous procefs.

How far the confideration, that if the court of appeals for the commonwealth fhould reject Talbot's caufe (as the court for the United States had done), the appellants

pellants would have had no other re-
fource, and fo been deprived of the be-
nefit of an appeal, might have operated
to induce the judges to take that caufe
within their cognizance as an *inftance*
court, I will not prefume to fay. But
the peculiar circumftances of the cafe
ought to be remembered ; and I have
mentioned them on this occafion, from a
fenfe of the duty I owe to the jurifdicti-
on entrufted to my care.

I come now to confider the origin of
the caufe before the court, and whether
it is, or is not, neceffarily dependent on,
and confequential to, the cafe of Silas
Talbot.

It has been faid, that this fuit is deriv-
ed from three circumftances, viz. the
contract by which Angus was made cap-
tain of the Hibernia—the wrongful tak-
ing at fea—and the damages the libel-
lants have been obliged to pay, in con-
fequence of this contract and wrongful
taking. And it has been urged, that
as two of thefe circumftances, viz, the
contract and the payment of damages,
happened

M

happened on the land, the common law, by the second general rule, hath the exclufive jurifdiction.

It appears to me, however, that owners are anfwerable for torts done by the captains they employ, under a general principle of the maritime law, and not by virtue of any fpecial contract. No fuch refponfibility can be deduced from any articles or failing orders given to captains of veffels. The contract may be the ground of an action of damages for a breach of orders refpecting the particular interefts of the owners; but, in cafes of tort, the owners are anfwerable by a general law. The libellants have been obliged to pay the damages in Talbot's cafe, not becaufe they employed Angus, but becaufe they were owners of the brigs.

Neither can I confider the payment of monies, according to the decree in favour of Silas Talbot, as the origin of the prefent fuit. We fhould not ftop fhort in the train of caufes. In fuch a train, every circumftance is the effect of the

preceding

preceding and the caufe of the fubfe-
quent link. No decree would have paft,
no damages have been paid, nor would
the prefent fuit have been inftituted, but
for the original wrong done at fea. To
this wrong, therefore, we muft have re-
courfe, for the fource of the prefent ac-
tion.

SOME pains have been taken to apply
the cafe of ranfom bills, charter parties,
and policies of infurance, all fueable at
common law, to the prefent fuit.—A ran-
fom bill fuppofes a divefture of property
by the rights of war, and the bill is a pro-
miffory note for a certain fum, in confi-
deration of the victor's relinquifhing his
right of conqueft, and reftoring the pro-
perty. In a fuit, therefore, on a ranfom
bill, the queftion of *prize or no prize* can
only come in incidentally, to fhew whe-
ther there was a value received or not.
For, if the taking was wrongful, the pro-
perty never divefted, and, of courfe, the
promiffory bill was given without confi-
deration.—Charter parties and policies
of infurance, are written contracts, exe-
cuted

cuted on land, refpecting certain fpe-
cific contingencies. It is altogether im-
material where thefe contingencies fhall
happen. The fuit is founded in the
binding force of the contract, and the
contingencies are only incidental cir-
cumftances, fhewing that the force of the
contract is to take place and operate.
But thefe are not parallel to the cafe be-
fore the court, wherein the libellants
complain of damages they have fuftain-
ed, in confequence of a tort committed
at fea, by the captain they had employed.

WHEN the cafe of Silas Talbot came
firft before this court, the libel was filed in
the name of Silas Talbot *qui tam*, againft
the brigs Achilles, Patty and Hibernia,
and againft certain perfons, in the faid
libel named, as owners and captains of
the faid brigs. All thefe perfons (ex-
cept two, if I rightly remember) appear-
ed either in perfon or by proxy, and en-
tered into ftipulations, according to the
practice of the court. In this form the
fuit proceeded through the admiralty
and through the court of appeals. The
queftion

queftion was general in both courts, viz.
Whether there had been a wrong done?
and if fo, Whether the parties who had
appeared as refpondents to the libel,
were anfwerable for the damage, and to
what amount? And, finally, the decree
was alfo general, that the appellants
fhould pay to the appellee certain mo-
nies, in recompence of the injury fuftain-
ed. But how far any particular captain,
or the owners of any particular veffel,
might have juftified themfelves by a fe-
parate defence, was never the fubject of
enquiry—no fuch fpecific juftification
having been proffered in either court.
And whether it is or is not now too late
to make difcrimination, may be the fub-
ject of future difcuffion : but I mention
this to fhew, that the prefent libel mani-
feftly rifes out of Talbot's cafe, and that
its purfuit will unavoidably force us up
to the wrongful taking *as prize,* for the
origin of the prefent fuit.

SINCE, then, I cannot but confider the
cafe of Silas Talbot as properly belong-
ing to the *prize court* of admiralty, and
that

that the prefent fuit originates from, and is a fupplementary part of, that tranfaction ; I cannot (according to the firft principle ftated) but overrule the prefent plea to the jurifdiction of this court.

I CONCLUDE with this obfervation, that in all pleas of this kind, where the law is doubtful, the leaning of the court will be in favour of its own jurifdiction. Not from a defire of extending the admiralty cognizance, but for this important confideration, That if the decifion in favour of the jurifdiction fhould be erroneous, the doors of the common law are open for redrefs, and a prohibition may be obtained ; but there is no remedy for the erroneous exclufion of parties who apply for the procefs of the admiralty, the benefit of the laws by which it is governed, and the fummary juftice it affords.